## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JOSÉ LUIS SOTO-COLÓN**,

      Petitioner,

      v.

**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

Civil No. 22-1108 (BJM)

## OPINION AND ORDER

José Luis Soto-Colón ("Soto") seeks review of the Social Security Administration ("SSA") Commissioner's finding that he is not entitled to disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 423. Soto contends that the Administrative Law Judge ("ALJ") erred at step five in finding that there were jobs in the national economy that he could perform. ECF Nos. 1, 10. The Commissioner opposed. ECF Nos. 11. This case is before me on consent of the parties. ECF Nos. 7, 12. After careful review of the administrative record and the briefs on file, and for the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify

a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in Appendix 1 of the regulations, impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to step four, at which point the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant's impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The summary that follows is of the pertinent parts of the transcript ("Tr.").

Soto was born on June 30, 1980, has a Bachelor's degree in computer science, can communicate in English but prefers Spanish, and worked in computer network support and in the Army Reserve as a radio operator (collectively from 2005 to 2016). Soto applied for disability benefits on October 8, 2019, claiming disability beginning August 9, 2019 (alleged onset date) at age 39[1] due to acid reflux, sleep apnea, bilateral knee pain, gastritis, tinnitus, shoulder pain, hydrocele of testis, and depression. He last met the insured status requirement through December 31, 2021 (date last insured). Tr. 17, 19, 28, 38, 42, 102-104, 1104-1124, 1147-1148, 1173.

The ALJ explained in the hearing decision that Soto had previously filed a claim in January 2018, which was denied, and the alleged onset date for this case pertains to the day after denial of benefits. The period the ALJ considered in this claim was from the alleged onset date of the current claim forward because the issue of disability for the period prior to this onset date was for the ALJ res judicata. Tr. 17, 1095, 1149.

### *Medical Background*

### San Juan VA Medical Center and San Juan Capestrano System

The Department of Veterans Affairs ("VA") granted Soto full service-connected disability under its standards of evaluation. Tr. 1934.

VA Medical Center records show that from December 2015 through August 2016, Soto was treated for shoulder pain, hydrocele of testis, allergic rhinitis, moderate obstructive sleep

---

[1] Soto was considered to be a younger individual (Tr. 28, 899), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

apnea, bilateral tinnitus and sensorineural hearing loss in his left ear, adjustment disorder with mixed emotional features, bilateral knee pain, and gastritis. A polysomnography performed in May 2016 confirmed moderate obstructive sleep apnea and sleep stages/arousals dysfunction. The sleep apnea made him unable to sleep. He snored a lot and felt tired all day. He used a continuous positive airway pressure ("CPAP") machine with improvement of symptoms and medications to control his sleep disorder. Tr. 146-147,167-172, 1241-1258. The ALJ's decision for the prior claim indicates that Soto underwent right shoulder arthroscopy in 2016 (Tr. 887) but the record does not contain the evidence of the surgery or post-operation notes.

The VA Hospital referred Soto for psychiatric hospitalization at San Juan Capestrano from February 20 to March 1, 2016. He was diagnosed with bipolar disorder mixed with psychosis, impulse control disorder, and general anxiety disorder. Post-traumatic stress disorder ("PTSD") was a precipitating factor. Symptoms upon admission included suicidal ideation, sadness, anxiety, impulsiveness and poor impulse control, anguish, hopelessness, poor concentration, verbal and physical aggression originated by family stressors, and destabilization of his emotional condition. Medications were prescribed. On discharge, Soto was alert; oriented in person, place, and time; logical, coherent, and relevant; and denied ideas of suicide or homicide. He was able to socialize, interact, and participate in therapies. He was to continue treatment at the VA Hospital. Tr. 127-131, 1236-1240.

In 2017 and 2018, VA monthly progress notes show that Soto was treated with medications and psychotherapy for obstructive sleep apnea, right shoulder pain, allergic rhinitis, gastro-esophageal reflux disease without esophagitis, bilateral tinnitus and sensorineural hearing loss in his left ear, lumbar spondylosis, PTSD, and an adjustment disorder with mixed anxiety and depressed mood.

February 2017 lumbosacral spine x-rays taken for lower back pain showed mild degenerative joint disease of the spine, mild facet arthropathy and spondylosis, and straightening of the spine suggesting inflammatory changes. A June 2017 thoracic spine x-ray taken for upper back pain showed no significant results. An August 2017 lumbar spine MRI performed due to lower back pain with difficulty walking revealed straightening of the lumbar lordosis which could be positional or secondary to a muscle spasm, multiple small Schmorl's nodes, mild degenerative changes more pronounced at the L1/2, and asymmetric fullness of the left renal lower pole. September 2017 notes indicate that his lumbar spondylosis caused severe low back pain, difficulty

bending over, and limited range of motion with pain in forward flexion, extension, right lateral flexion, left lateral flexion, right lateral rotation, and left lateral rotation. There was also evidence of pain with weight bearing and localized tenderness. Soto was able to perform repetitions with no addition loss of function or range of motion but he was not tested during a flare up episode. His muscle spasm of the thoracolumbar did not result in an abnormal gait or abnormal spinal contour. Muscle strength was normal. He had no muscle atrophy. Examination of the upper and lower extremities was normal. Knee and ankle deep tendon reflexes were normal. Straight leg raising test results were negative. There was no radiculopathy, ankylosis of the spine, intervertebral disc syndrome, or any other detectable neurological abnormalities. He did not require an assistive device to walk. Functional limitations on record included ability to perform semisedentary work that did not require prolonged standing, sitting, walking, or climbing stairs, no repetitive bending of the spine, no pushing or pulling, and lifting no more than twenty pounds. Tr. 174-183, 277-280.

September 2017 VA psychiatrist notes also indicate Soto was diagnosed with major depressive disorder, recurrent, in partial remission. He did not have a traumatic brain injury. On interview, Soto was alert, cooperate, oriented (in person, place, and time), spontaneous, and in contact with reality. He behaved properly and established eye contact with the examiner. His recent, remote, and immediate memory were preserved. Judgment was good and his insight adequate. There was no evidence of psychomotor retardation, agitation, or involuntary tics. His thought process was coherent and logical. There was no sign of disorganized speech, delusions, hallucinations, phobias, obsession, panic attaches, or suicidal ideas. The VA assessed that Soto had occupational and social impairment due to mild or transient symptoms which decreased work efficiency and his ability to perform tasks only during periods of significant stress. His symptoms were controlled by medication. He could manage funds. The psychiatrist added that Soto's condition was stable and not severe enough to interfere with his marital relation, step-parenting performance, daily activities, family responsibility, financial debts, and social functioning. The psychiatrist assessed that Soto's mental disorder did not preclude him from engaging in regular sedentary occupations. Tr. 188-192.

March 2018 notes also indicate a personal history of combat and operational stress reaction. Soto was again referred for hospitalization at San Juan Capestrano from August 2 to 20, 2018, at age 38 for major depressive disorder, anxiety, and psychosis. Notes also indicate he had sleep apnea and lumbar spondylosis. Medications were prescribed. On discharge, Soto was alert and

active; oriented in person, place, and time; logical, coherent, and relevant; had no hallucinations; denied ideas of suicide or homicide; and did not pose a risk against himself, others, or property. Soto integrated himself to the psychiatric sessions in an appropriate manner, managed to receive the maximum benefit of care, significantly improved his clinical conditions, and was receptive and committed to treatment and pharmacotherapy as part of his recuperation. Clinical prognosis was reserved. August 28 notes indicate that he was moderately anxious but stable and with appropriate affect. He was alert and oriented. His though process seemed logical and coherent. Judgment and insight seemed fair. VA September 2018 notes indicate Soto had a reaction to severe stress and had major depressive disorder, recurrent, in partial remission.  Soto completed a "Day Hospital" treatment and reported improvement of anxiety and mood, improvement of communication at home and of his marital interaction, and sleeping better using only Zolpidem and not needing Prazosin. Soto was logical and coherent, and more communicative and in control of his mood swings and less anxious or irritable. Notes also indicate that his judgment and insight were good and his memory intact. Soto and his wife also received supportive therapy for his adjustment disorder with anxious distress. During that session, Soto was alert and maintained eye contact. He was in full contact with reality, cooperative, and oriented. His mood was anxious. His thought process was coherent and logical. His judgment and insight were adequate. No perceptual disturbances or disruptive behavior was observed. He denied suicidal or homicidal ideation. Global Assessment of Functioning ("GAF")[2] scores from May 2017 to December 2018 were between 59 and 65.  Tr. 132-136, 146-167, 188, 243-256, 1285-1289.

April 2018 CT of his paranasal sinuses showed nasal obstruction. October to December 2018 notes indicate that Soto was diagnosed with sleep apnea with poor compliance because he was unable to leave his mask on, gastric reflux, allergic rhinitis, and shoulder pain for which he had received physical therapy in the past. Soto's pain level was at a zero in October, at a one in November, and at a seven in December. His BMI was between 27.3 and 28.8. Physical examination was normal. Soto was alert and oriented in time, place, and person. He walked with no apparent

---

[2] "GAF is a scale from 0 to 100 that was used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults.  A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social occupational, or school functioning.'" *Hernández v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 f.n. 1 (D.P.R. 2013)(*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)).

distress. As to his musculoskeletal system, range of motion was intact, muscle tone adequate, and there were no deformities. His extremities were normal. Neurological system showed no gross motor and sensory deficit. He was also evaluated at the mental health clinic and still presented symptoms consistent with adjustment disorder with anxious distress. In December 2018, he reported feeling better. Sometimes, he still had nightmares about danger and imminent death, would awaken in the middle of the night screaming, and would wake up with low energy and feeling anxious. Other days, he felt fine, was active and goal oriented, and had better communication with his wife. He continued searching for coping activities and was willing to try alternatives. He managed poorly his stressors and anticipatory anxiety. He was not suicidal. He was not afraid of anyone at home. He could handle his own money. He was to continue using a CPAP machine. Prescribed medications included Cyclobenzaprine for muscle spasm, Gabapentin for neuropathic pain, Loratadine and Fluticasone for allergy, Omeprazole and Ranitidine for stomach, Prazosin for high blood pressure, Flonase and Zyrtec when needed, Flexeril as needed, Sertraline for depression, Hydroxyzine Pamoate for anxiety, and Zolpidem Tartrate for insomnia as needed. This list of medications is not exhaustive nor includes all other medications prescribed throughout his years of treatment. Tr. 193-241, 276.

2019 notes indicate that Soto continued being treated for sleep apnea, gastric reflux, allergic rhinitis, and lower back pain. April 2019 psychiatry notes indicate that Soto was a thirty-eight year old man who handled poorly his negative thoughts that caused anxiety and had poor management of stressors, and include a referral to a psychologist and a request to be considered for a "Mindfulness for anxiety" group. Soto felt he had poor concentration and attention, and was hypervigilant and anxious when he was alone. 2019 notes collectively indicate that he was oriented in person, time, place, and situation. He was alert, attentive, cooperative, and reasonable. His affect adequate. His though process was normal, coherent, and logical. His insight and judgment were good and his memory intact. He was diagnosed with PTSD and unspecified anxiety disorder. May 2019 notes show that Soto complained of lower back pain that ran down his right leg. Review of systems was normal. Soto's BMI was 27.9 and he was found to be overweight. His pain level was at a seven. He was alert and oriented in time, place, and person. He did not appear to be in distress. His extremities were normal. His musculoskeletal range of motion ("ROM") was intact and muscle tone was adequate. He had no neurological gross motor and sensory deficit. He was referred to

physical therapy. Through December 2019, he was participating in mindfulness group psychotherapy and sessions with social workers. Tr. 330-347, 1975-2043.

Treatment for all his conditions continued through 2020 and 2021 by video and telephone due to the Covid-19 pandemic, in 2020 largely through follow-up calls by social workers. January 2020 notes indicate he still had sleep apnea, gastric reflux, allergic rhinitis, lower back pain which ran down to his leg, and depression/anxiety. He still used a CPAP machine. His pain level was at a six and his BMI still remained at around 27.5. His ROM was intact, muscle tone was adequate, and extremities and neurological system were normal. Mentally, he felt "calmer" and was using mindfulness techniques. His judgment and insight were good and his memory intact. His thought process was normal, coherent, and logical. He had illusions but no suicidal or violent ideation. September 2020 notes from the "primary care telephone clinic" indicate that Soto had bilateral hip pain, gastric reflux, chronic back pain, and allergic rhinitis. In March 2021, Soto still suffered from low back pain irradiating to his leg with leg numbness. April 2021 psychiatry notes indicate that Soto was moderately depressed as per a PHQ-9 Depression Scale. He had a GAD-7 score of 13 which indicated that his anxiety conditions should be carefully evaluated; scores higher than 15 up to 21 merited active treatment. He felt anxious and sad. He avoided people and felt anhedonic. His wife was supportive and he had a good extended family support. He felt he needed more help to control dysphoria and sadness. He still had nightmares related to military content and felt his life was always in danger. His sleep was restless. His mood was sad and his affect restricted. He denied suicidal or homicidal ideation and psychotic symptoms. He was logical and relevant. Soto declined participating in virtual group therapy, preferring in person therapy. He continued treatment with medications. Tr. 1954-197, 2259-2423.

### Procedural History

Along with his application for disability benefits, Soto filed a disability report in October 21, 2019, and a function report in November 4, 2019, claiming that his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. He could walk for a few minutes before having to stop and rest for more than twenty minutes. He forgot simple daily things like taking his medications and personal grooming, could not follow written or spoken instructions, could not complete simple household chores, or follow a conversation thread. He had memories and nightmares about the war, felt suffocated when

sleeping, and woke up tired. He used a sleep apnea machine and took medications. He felt that someone would hurt him. He felt sad, hopeless, scared, and useless. He had marital problems and did not have a sex life. His back hurt after standing for a short time and he had no strength in his right arm. He felt pain and physical discomfort when bathing and dressing. He could not lift weight. He could not run. It hurt to sit or stand. He only drove in case of emergency because he'd stress and feel afraid. His wife did the chores, shopping, driving, and would make sure he took his medications and groomed. He was able to handle funds and pay bills with assistance and would have to review transactions several times. He had no interest in having a hobby. Socially, he spent time at home with his wife and child or at his mother's house but did not have friends or interact with neighbors. He went to medical appointments on a regular basis. Tr. 110-117.

Dr. Yazmin Deynes evaluated Soto on January 27, 2020, for a mental condition, and diagnosed major depressive disorder, recurrent, severe with psychotic symptoms. Prognosis was guarded. He could handle funds. Tr. 585. Soto claimed not knowing his address and that he had stopped working approximately four years ago. He spoke of his military service near Syria and of the experience of having one of their pilots killed and having received threats for a year; "it became a hell for us." He believed the enemy knew who they were and that they were still being sought. Soto felt no peace and could not concentrate or express himself. He felt frustration for not being as before, happy and functioning. He was sad, anxious, tired, and felt no joy. He barely slept due to nightmares about combat situations. He would overeat and at times not eat well. Treatment started in 2015 and was currently being treated at the VA. He had had a full hospitalization and a partial hospitalization. Soto stopped working because he could not concentrate and because his cardiologist asked him to stop working. He denied having a history of alcohol or drug use. At home, he was of little help to his wife because of low back, shoulder, and memory problems. He could heat light things in the microwave, such as a sandwich. He barely had friends or went out. He would only drive if there's an emergency but otherwise his wife did. Concerning tolerance to pressures and tensions of daily living situations, Soto would isolate himself and shut himself in his room if he felt someone could hurt him. Tr. 577-580.

Dr. Deynes observed that Soto's general appearance, verbal productivity, and behaviors were adequate. Soto was oriented in person and place, and appeared to be logical, coherent, and relevant, but was anxious and depressed and showed poor visual contact. He had delusions of

persecution. He could get aggressive; Soto relayed that he once broke the windows of his brother's car. He denied having suicidal or homicidal ideas. Tr. 581.

When testing immediate memory, Soto was able to repeat three out of five words. As to short-term memory, Soto did not remember any of the five words after five minutes. He was able to remember remote information, such as where he was born, birthdate, and age. He appeared to be attentive but when testing concentration, Soto was unable to spell the word "world" ("*mundo*") forward or backwards correctly. His intellectual ability was also evaluated using tests of general knowledge, ability to interpret proverbs, arithmetic, and social judgment. Tr. 581-585.

The record also contains a consultative psychological report by Dr. Roberto Irizarry, prepared for the previous claim, dated August 23, 2018. Dr. Irizarry diagnosed PTSD and major depressive disorder, recurrent, severe without psychotic features, deferred. His GAF score was 51. Prognosis was poor. Soto's emotional state was co-related to his physical conditions. Dr. Irizarry opined that in a stressful environment, Soto could decompensate. Soto's appearance was clean and adequately dressed. His mood was anxious and depressed. His attention and concentration seemed poor. His thought process, insight, and social judgment seemed diminished.  He had no eye contact and his psychomotor activity was slow. His speech was mostly relevant and he spoke in a normal tone of voice. He was oriented in time, place, person, and circumstance. He established a good rapport and answered all questions. His thought form was coherent, relevant, and logical. He had no suicidal or homicidal ideas, or delusions, phobias, or ideas of reference during the interview. When tested for immediate memory, Soto could remember three out of five objects. For short-term memory, he remembered one out of five objects after five minutes. For recent memory, he remembered who brought him to the appointment and what he ate for dinner yesterday, but not what he wore yesterday. His long term memory was intact (he remembered date of birth, where he was born, his current age and his age when he had his first job). Soto was unable to spell the word "world" forward or backwards correctly. He was tested for general knowledge. As to social judgment, Soto could distinguish socially acceptable behaviors and act accordingly. He could handle funds. Tr. 140-143.

Soto informed Dr. Irizarry that he began psychiatric treatment three years ago, once a month. Symptoms included depression and anxiety. When asked about his response to treatment, Soto denied feeling better. Soto reported having stopped working in 2016 due to his emotional conditions. While on mission in the Middle East in 2014, they were under constant attack and in

less than a month of being there, one of his companions was killed. He was not able to sleep, had nightmares, and felt afraid of being killed. He was not able to concentrate and was forgetful, irritable, and angry. When angry, he would distance himself from people and vent by breaking things. He had problems sleeping, was unmotivated, lacked the desire to do anything, got upset a lot, and was always on alert. He was worried the most about his and his family's safety. His father had also died a year prior, which affected him a lot. Soto also informed Dr. Irizarry that he had not driven in several months because he was afraid something would happen to him; his wife brought him to the evaluation. He took care of his personal hygiene. His wife helped him with his medications and, while he could handle money, his wife paid the bills. He had social contact with his family but had no friends. He described having adequate relationships with co-workers and supervisors. Tr. 137-140.

Dr. Brenda Loubriel Rivera evaluated Soto for pulmonary function, finding a moderately severe obstructive ventilatory impairment responsive to bronchodilator therapy. Tr. 1899.

Dr. Carmen Ortiz performed a consultative evaluation on February 13, 2020. Soto was alert, oriented in person, place, and time, and cooperative. He was well groomed, adequately dressed, and kept direct eye contact. No articulation problems, tics, or unusual mannerisms were noted. Dr. Ortiz noted a normal gait, trapezius tenderness bilaterally, lumbosacral tenderness, varicose veins over his lower legs, a failed soft touch and pinprick sensation at L4 and L5 ventral side from below the knee to above the ankles bilaterally, positive SLR test in the left side, and limited ROM in the back, shoulders, hips, and knees. Muscle strength was a 4/5 in his feet and left knee. Soto had no hand limitations. Dr. Ortiz also noted that Soto's pain and limitations allegations were supported by physical examination findings and by the diagnostic studies available in file, which correlated with a degenerative disease. Findings also suggested a lumbar herniated disc. Tr. 1902-1915.

A consultative evaluation by Dr. Gil Hermida, prepared on August 29, 2018, for the prior claim, indicates that Soto was an overweight thirty-eight year old with chronic low back pain and lumbosacral strain. Lower extremities muscle strength was normal. Back ROM was limited; he walked with a rigid spine. Hand function was normal. Dr. Hermida assessed that Soto had an impairment for walking intermediate to long distances, standing or sitting for prolonged periods in a row, heavy lifting and carrying. His emotional conditions could preclude an adequate social interaction. He had no impairment for handling objects, speaking and hearing. Tr. 1303-1311.

August 2018 x-rays also showed normal knees. Metallic screws were visualized at the level of the right shoulder humeral head. Right and left shoulder x-rays were also normal; the bone mineralization was normal, the articulating spaces were preserved, and the surrounding soft tissues were normal. Tr. 1298-1301.

Dr. Jeanette Maldonado, State agency psychologist, evaluated the record and assessed on February 18, 2020, that it sustained a moderate emotional disorder with a diagnosis of major depression, moderate, and that Soto retained the RFC to perform simple tasks. Under Listing 12.04 (depressive, bipolar, and related disorders), as to the paragraph "B" criteria, Soto had moderate limitations to understand, remember, or apply information; mild limitations interacting with others; moderate limitations to concentrate, persist, or maintain pace; and moderate limitations to adapt or manage oneself. There was no evidence of paragraph "C" criteria. Dr. Maldonado assessed that Soto was moderately limited in his ability to remember locations and work-like procedures. He was moderately limited in his ability to understand, remember, and carry out detailed instructions, but not significantly limited to understand, remember, and carry out very short and simple instructions. He was not significantly limited in his ability to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted, and to make simple work-related decisions. He was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. He was moderately limited in his ability to interact appropriately with the general public, but not significantly limited in his ability to ask simple questions, request assistance, accept instructions, respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. He was moderately limited in his ability to respond appropriately to changes in the work setting, but not significantly limited in his ability to be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, or set reastic goals or make plans independently of others. Tr. 908-909, 914-916.

Dr. Magda Rodríguez, State agency internist, reviewed the medical evidence on record and assessed on February 19, 2020, that the data supported the presence of severe impairments. Listings 1.02 Disfunction major joints, 1.04 spine disorders, 5.02 GI hemorrhage, 3.02 chronic respiratory disorders, 3.03 asthma, and 14.09 inflammatory arthritis were considered. There were no audiograms to support a hearing condition or documented limitations related to hydrocele of testes. Dr. Rodríguez noted that it was reasonable to assess that Soto presented chronic pain related to some of his conditions, but that the impairments did not meet or equal any listing severity nor his symptoms entirely correlated with the medical evidence on record, particularly as to handling, talking, and walking. Dr. Rodríguez assessed that Soto retained the RFC to perform light work with some limitations: he could lift and/or carry twenty pounds occasionally (cumulatively one-third or less of an eight-hour workday) (including upward pulling) and ten pounds frequently (cumulatively more than one-third up to two-thirds), stand and/or walk with normal breaks for six hours, and sit with normal breaks for six hours. He could push and/or pull (including operation of hand and/or foot controls) unlimitedly, other than shown for lift and/or carry. Soto could occasionally climb ramps/stairs and ladders/ropes/scaffolds. He could occasionally balance, stoop (bend at the waist), kneel, crouch (bend at the knees), and crawl. Soto had no manipulative, visual, or communicative limitations. As to environmental limitations, Soto had to avoid moderate exposure to extreme cold or heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. Soto also had to avoid hazards such as cutting or moving machinery, commercial driving, and unprotected heights. Tr. 906-913, 917.

The claim was denied on February 19, 2020, with a finding that Soto was not disabled under SSA regulations. Tr. 77, 898. Soto requested reconsideration (Tr. 956) and did not claim additional conditions or changes in his existing ones, but did claim changes in his daily activities due to his physical or mental conditions, such as no longer being able to do things he used to and needing help with almost everything. Tr. 1174, 1177, 1185, 1187.

On June 16, 2020, Dr. José González and Dr. Jennifer Cortés affirmed Dr. Rodríguez's and Dr. Maldonado's RFC assessments as written, respectively. Tr. 931, 934.

The claim was denied on reconsideration on June 25, 2020. Tr. 81, 919.

At Soto's request (Tr. 960), a hearing was held by telephone (as per the SSA's Covid-19 pandemic protocol and Soto's consent) on July 9, 2021,[3] before ALJ Julicel Sepúlveda Anavitarte.

---

[3] The ALJ's decisions states that the hearing was held July 19, 2021. Tr. 17

Soto, medical expert ("ME") Dr. Amarilis Serrano, ME Dr. Francisco Joglar, and vocational expert ("VE") Eligio Hinojosa testified. Tr. 36-64, 84.

Soto testified that he used to work at a computer company, Evertec, repairing computers, charging them, setting them up, and troubleshooting and in the Army Reserves for around six years, setting up communication antennas, radios, and other large equipment in Syria. Soto testified that being in Syria was a life-or-death situation all the time and, while in Syria, a friend who was part of the group was killed and burned; from that moment on, he lost his happiness. He wasn't able to return to his job at Evertec because he felt that he was a target. He didn't trust people around him and didn't want to be around people. He would lose control with others and even assaulted his brother once. He'd freeze up. He hadn't been expressing things to his psychologist because he didn't know who to trust. His psychiatrist prescribed medication for depression. He had nightmares and anxiety attacks. His wife helped him with his daily medication intake because he forgot things easily. Soto had not had psychiatric hospitalizations after his alleged onset date, only psychiatric treatment through the VA. Also, he couldn't return to work because physically he was always tired and his medications knocked him out. He'd sleep during the day. He had knee and lower back pain. He wore compression socks for circulations and after sitting for a long time, his legs got numb. He had right shoulder surgery for an injury while serving in the military and his right arm hurt so he couldn't exert strength or reach overhead. He felt useless. During the COVID pandemic, he was not able to follow-up on treatment. He also had a tinnitus condition which affected his ability to communicate and aggravated him emotionally. Tr. 42-49.

ME Dr. Joglar summarized the evidence of the physical impairments in the record and testified that Soto's impairments, individually or in combination, did not meet or equal any listing. Dr. Joglar further testified that Soto could occasionally lift twenty pounds and frequently ten pounds. Soto could sit for six hours in an eight-hour day and stand and/or walk for four hours. He could climb ramps and stairs frequently but shouldn't climb scaffolds, ladders, or ropes. He could balance frequently and kneel occasionally. He shouldn't crawl. The transcript at Tr. 52 says Soto could "stoop occasionally … He shouldn't stoop." He could frequently reach overhead with both upper extremities and there were no limitations with reaching in other directions. There were no documented limitations of use of hands. As to environmental limitations, Soto should never work at unprotected heights. He could occasionally work with moving mechanical parts and driving a

motor vehicle. He could occasionally be exposed to extreme temperatures and pulmonary irritants. Tr. 50-52.

       Counsel for Soto asked if reaching overhead should be occasionally instead of frequently given his right shoulder surgery and Dr. Joglar answered that with the documented physical exams, the evidence was consistent with "frequent." Dr. Joglar further testified that there was no objective documented evidence of a hearing impairment. Tr. 53.

       ME Dr. Serrano testified that Soto's mental conditions did not meet or equal a listing. Listing 12.06 was considered, and for "Criterion B … B1 would be moderate, B2 would be mild, B3 would be moderate, and B4 would be mild." Criterion C was not present. Tr. 54. Dr. Serrano further testified that Soto would be limited to simple, routine, and repetitive tasks that could be done at a production pace, such as an assembly line. Soto was able to manage funds. Tr. 55-56. To counsel's questions, Dr. Serrano found no evidence of limitations interacting with the general public, only Soto's testimony during the hearing which pertained to the time period of 2017-2018 and evidence from the VA that indicated that once he began treatment, his condition became moderate. Tr. 57-59.

       The ALJ asked the VE if a person such as Soto could work if he were limited to light exertional work: lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours but stand or walk for four hours; pull and push just as he could lift and carry; frequently reach overhead with both arms; climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop and kneel; never crouch; never crawl; never be exposed to unprotected heights; occasionally move mechanical parts, be exposed to moving machinery, operate a motor vehicle, and be exposed to moisture and wetness, and lung and/or environmental irritants; occasionally be exposed to extreme cold or extreme heat; and be limited to simple, routine, and repetitive tasks; and the use of judgment is limited to doing simple tasks. The VE answered that Soto could not perform his past jobs as he performed them but that there were light, unskilled jobs he could perform with these limitations, such as ticket taker and small products assembler. He could also do garment sorter, available with a 30% reduction to accommodate for sitting and standing for four hours. Tr. 59-63.

       The ALJ added to the hypothetical if he could occasionally interact with the public and frequently with supervisors and co-workers. The VE answered that the ticket taker job would not be available but he could do garment sorter and small parts assembler jobs. When asked if there

were other light jobs available with these social limitations, the VE answered that they would have to add sedentary work. Tr. 63.

Counsel asked the VE to switch frequent overhead reaching with occasional overhead reaching. The VE answered that there would be no work at the light level with those limitations. Tr. 63-64.

In a disability report filed on July 13, 2020, Soto again did not claim additional conditions or changes in his existing ones, but did claim changes in his daily activities due to his physical or mental conditions, such as no longer being able to do things he used to and needing help with almost everything. Tr. 1185, 1187.

On October 1, 2021, the ALJ found that Soto was not disabled under sections 216(i) and 223(d) of the Act. Tr. 17-30.

The ALJ sequentially found that Soto:

(1) had not engaged in substantial gainful activity since his alleged onset date of August 9, 2019 (Tr. 19);

(2) had severe impairments (reflux, gastritis and duodenitis, lumbar spine disorder, status-post right shoulder arthroscopy, asthma, obstructive sleep apnea, major depressive disorder, and anxiety disorder) (Tr. 20);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526) (Tr. 20);

(4) could not perform past relevant work (Tr. 27) because he retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following additional limitations: lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit for six hours and stand or walk for four hours each in an eight-hour workday; frequently reach overhead to the left and to the right; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; balance frequently; stoop occasionally; kneel occasionally; never crouch or crawl; never work at unprotected heights; occasionally work exposed to moving mechanical parts and operating a motor vehicle; and occasionally work in humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. Soto also had mental limitations; he was able to perform simple, routine, and repetitive tasks and was able to perform simple work-related decisions (Tr. 22-23); and

(5) through the date last insured and considering Soto's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Velásquez could perform. Tr. 28.

The ALJ found that Soto also had non-severe impairments (bilateral knee disorder, hydrocele of testis, and bilateral tinnitus) which caused only transient and mild symptoms and limitations, were controlled with treatment, or were otherwise not adequately supported by the medical evidence in the record. Tr. 20.

On January 10, 2022, the Appeals Council denied Soto's request for review of the ALJ's decision, finding no reason for review and rendering the ALJ's decision the final decision of the Commissioner. Tr. 1, 4, 8, 90-94. The present complaint followed. ECF No. 1.

## DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at step five that Soto had the RFC to perform other work in the national economy. Soto argues that the ALJ's RFC and step five findings were not supported by substantial evidence.

In reviewing the record for substantial evidence that supports or not the ALJ's sequential evaluation findings, I am mindful that the claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). A medically determinable impairment or combination of impairments "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. It "must be established by objective medical evidence from an acceptable medical source," and cannot be based on a claimant's "statement of symptoms, a diagnosis, or a medical opinion." *Id.*

As a preliminary matter, Soto in his memorandum (as well as in his request for review of hearing decision at Tr. 90-93) points out that he was found to be totally and permanently disabled by the VA due to his service-connected disabilities and argues that the ALJ did not consider prior administrative findings. ECF No. 10, p. 3, 91. I note that under the SSA's revised regulations, which apply in this case since the claim was filed on or after March 27, 2017, as per 20 C.F.R. §§

404.1504[4] and 404.1520b(c)(1)-(3), the VA's decision regarding disability is considered by the SSA inherently neither valuable nor persuasive to the issue of whether a claimant is disabled under SSA rules. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017). The ALJ is not required to adopt or provide an analysis about the VA's decision but will consider the supporting evidence underlying that decision under SSA rules. 20 C.F.R. § 404.1504.

Soto claims generally that his mental impairments meet or medically equal the criteria of listing 12.04 because he has marked limitations based on the "paragraph B" criteria and because medical source concluded that he equaled a listing but points to no evidence in the transcript to support his claim. ECF No. 10, p. 89-90. The ALJ found at step three that Soto's mental impairments did not meet listing 12.04 (depressive, bipolar or related disorders) and listing 12.06 (anxiety and obsessive-compulsive disorders) because the "paragraph B" and "paragraph C" criteria were not satisfied. Tr. 21-22.

Listing 12.04 (depressive, bipolar, and related disorders) has three paragraphs, designated A, B, and C. A claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or both A and C. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. While not mentioned in the ALJ's decision, paragraph A of listing 12.04 requires medical documentation of at least five of the listed characteristics (depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, observable psychomotor agitation or retardation, decreased energy, feelings of guilty or worthlessness, difficulty concentrating or thinking, thoughts of death or suicide), which in Soto's case are documented throughout the record (except for suicide).

To satisfy the paragraph B criteria, a claimant's disorder must result in an extreme limitation of one area or marked restrictions in two of the following areas: understanding,

---

[4] 20 C.F.R. §§ 404.1504 states: "Other governmental agencies and nongovernmental entities – such as the Department of Veterans Affairs …. – make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)."

remembering, or applying information; interacting with others; maintaining concentration, persistence, or pace; or adapt or manage oneself. Paragraph B criteria use a five-point rating scale. Moderate functioning means that a claimant can fairly carry out the activity independently, appropriately, and effectively, and on a sustained basis, unlike a marked limitation which means that the claimant is seriously limited in functioning in that area. Extreme limitation is when a claimant is unable to function independently, appropriately, and effectively, and on a sustained basis.  To satisfy the paragraph C criteria, a claimant must show that he had a "serious and persistent" disorder that lasted over a period of at least two years and that he relied on ongoing medical treatment to diminish the symptoms and had only achieved marginal adjustment. 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders.

The ALJ found at step two that Soto's major depressive disorder and anxiety disorder were severe. Tr. 20. As to the paragraph B criteria in the step three analysis, the ALJ found that Soto had moderate limitations in understanding, remembering, or applying information because, while he alleged having difficulty completing tasks, following instructions, and understanding, the record showed he was able to provide information about his health and comply with treatment but was unable to recall five of five words after five minutes. Soto had mild limitations interacting with others because while he claimed having difficulty engaging in social activities, he was pleasant and cooperative as per medical evidence. Soto had moderate limitations with concentrating, persisting, or maintaining pace because the evidence in the record showed he presented difficulties concentration and was unable to spell the word "world." Soto had mild limitations in adapting or managing oneself because while he asserted having difficulties performing household chores, the evidence showed he had appropriate grooming and hygiene, could drive, and manage funds. There was no evidence of paragraph C criteria. Tr. 22.

I find that evidence from the records substantially supports these step three findings. For starters, I found no evidence of a medical source stating that Soto's impairments met or equaled a listing. ME Dr. Serrano testified that Soto's mental conditions did not meet or equal a listing. Dr. Maldonado, State agency psychologist, evaluated the record and assessed, and was so affirmed as written by Dr. Cortés, that under Listing 12.04, Soto had moderate limitations to understand, remember, or apply information; mild limitations interacting with others; and moderate limitations to concentrate, persist, or maintain pace. While Dr. Maldonado assessed that Soto had moderate limitations to adapt or manage oneself, other evidence supports a mild limitation in this area. Dr.

Deynes observed that Soto's general appearance, verbal productivity, and behaviors were adequate. Soto reported being able to groom himself, drive, and handle funds. The VA record, Dr. Irizarry, and Dr. Serrano also noted Soto's ability to handle funds. Dr. Deynes's record has evidence of Soto's ability to remember. When testing immediate memory, Soto was able to repeat three out of five words. As to short-term memory, Soto did not remember any of the five words after five minutes. He was able to remember remote information, such as where he was born, birthdate, and age. He appeared to be attentive but when testing concentration, Soto was unable to spell the word "world" forward or backwards correctly. I thus conclude that this claim is meritless.

Soto also claims without supporting evidence that the ALJ's RFC finding is unsupported by substantial evidence, particularly as to the finding regarding "reaching" limitations; that the ALJ did not properly consider or ignored the symptoms and medical opinions and did not afford proper weight to the treating medical sources and their RFC findings; and that the ALJ did not mention his testimony or give weight to it in combination with the medical evidence from his treating sources. Soto again does not offer in his blank arguments transcript evidence to support these claims. Instead, Soto posed a series of questions with additional restrictions that he believes the ALJ should have asked the VE. ECF No. 10, p. 1, 90-93.

At step five, the claimant has met his burden to show that he is unable to perform past work, and the burden shifts to the Commissioner to come forward with evidence of specific jobs in the national economy that the claimant can still perform. *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). The Commissioner may satisfy this burden by obtaining testimony from a VE. *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001).  The ALJ must express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity.  *Arocho*, 670 F.2d at 375.  In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.*  A claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the

claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982).

I note that Soto makes reference to the old regulatory framework for evaluating evidence. For cases filed on or after March 27, 2017, such as this one, the ALJ is no longer required to assign specific weights, including controlling weights, or to give "good reasons" to any medical opinion or prior administrative medical finding as per 20 C.F.R. § 1527(c)(2) and SSR 96-2p. Now, the persuasiveness of the medical opinions of each medical source is evaluated using the factors listed in paragraphs § 404.1520c(c)(1) through (c)(5) (supportability, consistency, relationship with the claimant, specialization, and other factors that support or contradict a medical opinion or prior administrative medical finding). The ALJ is only required to discuss the application of the supportability and consistency factors in the written decision. If contrary medical opinions are equally persuasive, then the ALJ is required to discuss the other factors. Also, if a single medical source offers multiple opinions, the ALJ may address them collectively in a single analysis; the ALJ is not required to discuss each opinion individually. *Richardson v. Saul*, 565 F. Supp. 3d 154, 167 (D.H.N. 2021) (*citing* 20 C.F.R. § 404.1520c(b)(1)-(3)). Also, the ALJ is not obligated to discuss every bit of evidence. *Frost v. Barnhart*, 121 Fed. Appx. 399 (1st Cir. 2005). And, as mentioned earlier, the ALJ is ultimately responsible for piecing together an RFC assessment based on the record. The ALJ here thoroughly discussed Soto's listed impairments and the persuasiveness of the evidence the ALJ considered to reach the RFC finding and ultimate step five determination at Tr. 23-27. This evidence included the VA record, consultative examinations, and State agency assessments. The ALJ also considered Soto's own pain allegations and testimony, finding that his physical and mental impairments could reasonably be expected to cause the alleged symptoms, but his statements regarding intensity, persistence, and limiting effects were not entirely consistent with the medical evidence and other evidence in the record. Tr. 23.

The ALJ found that Soto had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following additional limitations: lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit for six hours and stand or walk for four hours each in an eight-hour workday; frequently reach overhead to the left and to the right; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; balance frequently; stoop occasionally; kneel occasionally; never crouch or crawl; never work at unprotected heights; occasionally work exposed to moving mechanical parts and operating a motor vehicle; and occasionally work in

humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. Soto also had mental limitations; he was able to perform simple, routine, and repetitive tasks and was able to perform simple work-related decisions. This is the RFC that made it into the hypothetical question posed to the VE.   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Individuals capable of performing light work can also perform sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

The record establishes a very lengthy history of treatment that spans years at the VA for various conditions. The ALJ found the following conditions to be severe: reflux, gastritis and duodenitis, lumbar spine disorder, status-post right shoulder arthroscopy, asthma, obstructive sleep apnea, major depressive disorder, and anxiety disorder. The non-severe impairments are also discussed at Tr. 20. All these conditions were kept at bay with medications, the use of a CPAP machine, therapy, and continuous monitoring by VA staff, especially during the Covid-19 pandemic.

As to Soto's right shoulder surgery and alleged limitations reaching, the ALJ's decision for the prior claim mentioned that Soto underwent right shoulder arthroscopy in 2016 (Tr. 887) but the record for this case does not contain the evidence of the surgery or progress notes for the relevant time period that document reaching capabilities. August 2018 shoulder x-rays show metallic screws at the level of the right shoulder humeral head but otherwise normal results for both shoulders; the bone mineralization was normal, the articulating spaces were preserved, and the surrounding soft tissues were normal.

Soto's pain allegations are well documented throughout the record. VA evidence closer to his alleged onset date of August 2019 shows that while he still had pain from his conditions and depression, his range of motion was intact, his muscle tone was adequate, and his extremities and neurological system were normal. 2019 notes collectively indicate that he was oriented in person, time, place, and situation. He was alert, attentive, cooperative, and reasonable. His affect was adequate. His though process was normal, coherent, and logical. His insight and judgment were

good and his memory intact. He could handle funds. At times, he'd report feeling better emotionally.

The ALJ considered Dr. Hermida's 2018 consultative evaluation from the prior application. Dr. Hermida found that Soto's lower extremities muscle strength was normal. Back ROM was limited; he walked with a rigid spine. Hand function was normal. He had an impairment for walking intermediate to long distances, standing or sitting for prolonged periods in a row, heavy lifting and carrying. His emotional conditions could preclude an adequate social interaction. He had no impairment for handling objects, speaking, and hearing. The ALJ also considered Dr. Ortiz's 2020 consultative evaluation that showed evidence of normal gait, trapezius tenderness bilaterally, lumbosacral tenderness, varicose veins over his lower legs, a failed soft touch and pinprick sensation at L4 and L5 ventral side from below the knee to above the ankles bilaterally, positive SLR test in the left side, and limited ROM in the back, shoulders, hips, and knees. Muscle strength was a 4/5 in his feet and left knee. Soto had no hand limitations.

The ALJ discussed as well Dr. Irizarry's 2018 consultative psychological evaluation. Dr. Irizarry observed that Soto's mood was anxious and depressed. His attention and concentration seemed poor. His thought process, insight, and social judgment seemed diminished. When tested for immediate memory, Soto could remember three out of five objects. For short-term memory, he remembered one out of five objects after five minutes. His long term memory was intact. He could not spell a five-letter word backwards. As to social judgment, Soto could distinguish socially acceptable behaviors and act accordingly. Dr. Deynes evaluated Soto in January 2020 during the relevant time period and also observed that Soto's memory was limited. He could not recall any of five words after five minutes and was not able to spell the same word backwards. The ALJ found persuasive both their assessments that Soto could handle funds.

The ALJ adopted MEs Dr. Joglar's and Dr. Serrano's assessments into the RFC assessment, finding their opinions persuasive because they reviewed the entire medical record as well as listened to Soto's testimony. Particularly as to Soto's claim that he had limited ROM post-right shoulder surgery, counsel for Soto had the opportunity to ask Dr. Joglar at the hearing if reaching overhead should be occasionally instead of frequently given Soto's right shoulder surgery and Dr. Joglar answered that with the documented physical exams, the evidence is consistent with "frequent."

Soto v. Commissioner of Social Security, Civil No. 22-1108 (BJM)                                      24

     The evidence discussed above is just an excerpt of the abundant evidence available in the record to support the ALJ's RFC finding and step five decision to deny benefits. Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at 769 (citing *Rodríguez*, 647 F.2d at 222); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's findings in this case.

**CONCLUSION**

     For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2023.


                              ***s/Bruce J. McGiverin***
                              BRUCE J. McGIVERIN
                              United States Magistrate Judge